METROPOLITAN LIFE INSURANCE COMPANY, Appellant, v. C. V. STEINER et al., Appellees.

No. 42645.

MARCH 12, 1935.

786

Clifford Powell, Tinley, Mitchell, Ross & Everest and Henry & Henry, for appellant.

Wright & Baldwin, Geo. S. Wright, Addison G. Kistle, Paul E. Roadifer and Stipp, Perry, Bannister & Starzinger, for appellee Annis & Rohling Co.

Paul W. Richards, for appellees C. V. and Lottie B. Steiner.

POWERS, J.—Plaintiff-appellant brought its action to foreclose a real estate mortgage executed by the defendants Steiner. Defendant-appellee was made a defendant because of a claimed interest in the subject-matter of the suit. It filed an answer setting up an interest in the mortgage. In pursuance of a stipulation, the issues between these parties were first tried in a proceedings to which the maker of the note was not a party. The plaintiff-appellant, the Metropolitan Life Insurance Company, will be referred to as the insurance company, and the defendant-appellee, the Annis & Rohling Company, will be referred to as the loan company.

Two questions are involved, first, did the loan company have an interest in the note and mortgage sued upon by the insurance company; and, second, did the loan company have such an interest as that the payment of the note could not be accelerated by the insurance company alone and without the loan company joining in the exercise of the option to accelerate?

I. The question as to whether or not the loan company had an interest in the note and mortgage being foreclosed by the insurance company depends upon the contract between them. That contract, as it relates to transactions of the type here under consideration, was not a formal written contract. It grew out of a course of dealing over a number of years and consists in such course of dealing and in oral and written representations made by one party and consented to by the other. While there is great divergence of view between the parties as to the proper interpretation of the contract, the evidentiary facts are not in serious dispute. The loan company had been acting for many years as a farm loan correspondent of the insurance company for western Iowa. The original arrangement between them contemplated that the loan company would make the loan and sell it to the insurance company. The volume of business became so great that the loan company appears to have been unable to finance transactions handled

in that way. A change was then made by which the application for the loan was sent to the insurance company, and if approved by it, the loan papers were executed and forwarded to the insurance company and if found acceptable, the amount of the loan was deposited to the credit of the loan company which then paid the borrower. The loans originally were all for periods of five or ten years at a fixed rate of interest. The loan company charged the borrower a commission which was carried as a second mortgage on the land, payable with the interest on the first mortgage and the amount of it was governed by the amount of interest on the first mortgage.

About the year 1923 or 1924, the insurance company devised a new farm loan plan designed to enable the borrower to pay a part of the principal each year and thereby reduce his indebtedness. These loans were on the amortization plan, and ran over periods of twenty, thirty, or forty years. The insurance company sent out booklets and circulars explaining the plan to the loan company. Its representatives visited the loan company and explained the plan. By representations contained both in the circulars and booklets sent out, and in the statements made by the representatives orally, it appears that it was desired that the loan company submit applications for such type of loans; that no separate commission second mortgage would be allowed in connection with such loans; that all deferred commission payments on account of the loan would have to be included as interest on the first mortgage note. For example, the interest rate to be received by the insurance company was 5 per cent per annum, but the correspondent was allowed to submit loans on the basis of $5\frac{1}{4}$ or $5\frac{1}{2}$ per cent, the difference between such per cent and 5 per cent representing what the correspondent was to receive by way of commission.

The particular loan in question is represented by an extension agreement. The original loan was for $19,700, and was for a period of five years at 5 per cent interest, so far as the insurance company was concerned. Whatever in addition was paid by the borrower went to the loan company as commission for negotiating the loan. The mortgage became due in 1928. It was the suggestion of the insurance company that loans of this type be converted into amortization loans in order that the principal might be progressively reduced. The loan company had instructions from the insurance company authorizing such loans on a 5 per cent basis. When the loan became due, the loan company proposed to the borrower that

he pay $1,700 and apply for a new loan on the amortization plan for $18,000, to be paid over a period of thirty years; the interest to be computed on the basis of $5\frac{1}{4}$ per cent per annum, the 5 per cent to go to the insurance company as interest and the $\frac{1}{4}$ of 1 per cent to go to the loan company as commission. Application was drawn accordingly. In transmitting the application to the insurance company, the loan company wrote a letter in which it said:

"Enclosed find application for a loan of $18,000.00 to be secured upon 240 acres in Montgomery county, Iowa, for a term of thirty years under plan No. 1, full amortization, rate $5\frac{1}{4}$ per cent, out of which we reserve $\frac{1}{4}$ per cent per annum under terms of the mortgage. This is a renewal and reduction loan to your present loan X20414 Steiner, $19,700.00."

The application was accepted by the company and the new loan on the amortization basis effected by means of an extension agreement covering the balance due on the old loan.

When the extension agreement was received by the insurance company, it wrote to the loan company a letter in which it said:

"That you may receive some commission in connection with the loan, you are authorized to retain from the proceeds of the annual amortization payments as same mature and are paid, a sum equal to $\frac{1}{4}$ of 1 per cent per annum, computed on the then unpaid balance of principal due, subject to all payments to be applied on principal made in excess of amounts tabulated on the enclosed schedule, Form F. L. 91, listing the annual amounts to be retained by you under this arrangement."

The insurance company concedes that it was to receive out of the payment to be made by the borrower in pursuance of the extension agreement only 5 per cent interest on the loan, and that the additional amount which the borrower was required to pay as interest, or the $\frac{1}{4}$ of 1 per cent, properly belonged to the loan company. The insurance company contends, however, that the loan company had only such interest in the payment as had been granted to it by the insurance company, and that the insurance company had granted only a right to retain out of the payments received by the loan company a sum equal to the $\frac{1}{4}$ of 1 per cent, and that the right, therefore, of the loan company to receive anything out of the loan depended upon its collection of the installments due under

the extension agreement. In other words, the insurance company construes the contract to mean that the loan company was to re-ceive its ¼ of 1 per cent out of the annual payments, if, as, and when the borrower made said payments to the loan company; that if the annual payments were not made to the loan company it would receive nothing; that since the borrower has quit paying, and allowed the mortgage to go into default and action to foreclose has become necessary, the loan company has no further interest.

On the correctness of this contention depends the principal issue in the case. For a solution we must give further considera-tion to the significance of some of the undisputed facts in the case. The insurance company when it commenced its action to foreclose asked judgment for the full amount of the past-due installments. Later, by amendment, it asked judgment for only the principal due with interest at 5 per cent. In other words, although the interest was delinquent on the loan for nearly three years, and the contract with the borrower required him to pay 5¼ per cent interest, the insurance company asked only 5 per cent interest. It thereby recognized, what it could not very well dispute, that as to it, the loan was a 5 per cent loan; that it was entitled to receive only 5 per cent interest. But the borrower in the writing on which the suit is based was required to pay 5¼ per cent interest. What became of the other ¼ of 1 per cent? The borrower owed it; the insurance company did not even claim it. Who did it belong to? It can hardly be said to have evaporated. The borrower had added that ¼ of 1 per cent to his obligation to pay interest as compensation to the loan company for obtaining the loan for him. This was done with the knowledge and consent, and even at the suggestion, of the insurance company. Who had the right to give it away? Certainly not the man who owed it, and certainly not the insurance company who claimed no interest in it. It would seem rather ob-vious that this amount of interest which had accrued, representing the additional ¼ of 1 per cent, which the borrower had agreed to pay as interest and which the insurance company did not claim, was the property of the loan company.

But it is suggested by appellant that the only interest of the loan company was what the insurance company had granted it in the letter from which we quoted above, and that was merely a right to "retain" from the annual payments on the loan "when and as collected". The premise is false. That letter is not the source of

the right of the loan company, but only a recognition of the right, and a suggestion of a means of giving effect to it. When the loan was submitted to the insurance company in the first place, it was on the basis of the loan company retaining in it the $\frac{1}{4}$ of 1 per cent interest. The letter of transmittal, hereinabove set out, specifically stated "we reserve $\frac{1}{4}$ per cent per annum under terms of mortgage". The loan was accepted by the insurance company on that basis. The right to the extra $\frac{1}{4}$ per cent never became the property of the insurance company. It, therefore, could not become the subject of a conditional grant from the insurance company to the loan company.

This interpretation finds further support in the course of dealing between the parties and the representations, both oral and in writing, made by the insurance company and relied upon by the loan company. Without referring to the record in detail, some of the more significant circumstances may be mentioned.

The officers of the loan company testified that when the manager of the farm loan division of the insurance company visited the offices of the loan company in Council Bluffs, Iowa, he told them that no separate commission mortgage would be allowed in connection with these loans made on the amortization plan; that the loan company was to include a part of the commission in the first mortgage, and that a part of the commission would be covered and protected in the first mortgage. This testimony was not disputed. But more important than that, it is confirmed by the printed circulars and booklets sent by the insurance company to the loan company explaining the manner of handling this type of loan. For example, one of the exhibits is typed or mimeographed memorandum addressed by the company to its financial correspondents in which the following appears:

"All calculations for such amortized loans must be based on our tables which will show on the basis of a $1,000 loan; the term of the loan; the annual payment required from the borrower, including interest, *correspondent's commission secured under first mortgage*, and the annual reduction of principal; unpaid balance of principal; and the discounted value of maximum cash commission permitted to be charged." (Italics ours.)

It can hardly be said that a commission is *secured under first mortgage* if the person who is entitled to it can receive it only in the event the person who owes it voluntarily pays it to him. The

idea that no suit can ever be maintained to collect it, that it disappears as soon as the obligor defaults in payment, can hardly be reconciled with the idea that its payment is secured. It could not be *secured under first mortgage* if it disappeared the moment foreclosure of the first mortgage became necessary. These representations, both oral and in writing, show an intention on the part of the insurance company and the loan company to have the deferred commission due the loan company payable as interest on the first loan, and collectible in the same way and secured in the same way and to the same extent.

Our conclusion is that under the circumstances in this case, the loan company has an interest in the total debt represented by the extension agreement, assuming, what is not in controversy between the parties, that the total debt includes not only the principal of the loan but several years of accrued interest.

The case of Andrew v. Metropolitan Life Insurance Company, 211 Iowa 282, 233 N. W. 473, relied upon by appellant, has little, if any, bearing here. In that case there was a definite written contract. The provision allowing the financial correspondent to deduct a part of the interest was as compensation for servicing the loan and the contract provided for cancellation of the contract at the pleasure of the insurance company. In this case there is no definite written contract on the subject, and the participation of the loan company in the interest here is definitely as compensation for making the loan, not as compensation for collecting interest.

The trial court held that the loan company had an interest or right of participation in the mortgage debt, but that since the maker of the note was a necessary party to the proceedings to determine the amount or extent of that interest, it could not be determined in his absence. As we understand the situation, the maker of the note was later brought into the case but filed motion for continuance under the Moratorium Act. Appeal was then taken by the insurance company from the decree which had been entered determining that the loan company had an interest in the mortgage. In view of this situation, the question of the amount or extent of the interest of the loan company in the mortgage is not before this court, and we do not determine it.

II. The second question in the case is whether the loan company had such interest as that the debt could be accelerated without its joining in the exercise of the option to accelerate. The

trial court held that while the loan company had an interest, its interest was relatively small and it should not be allowed to prevent the acceleration. This conclusion finds support in the fact that the extension agreement purported to give to the insurance company, not the loan company, the right to accelerate. Moreover, the acceleration has reference to the principal, not the interest, and the principal in this case was all owned by the insurance company. The participation of the loan company was confined to a portion of the interest. Under such circumstances, we are disposed to hold that the right to accelerate payment belonged to the insurance company exclusively.

The loan company contends that by the acceleration of the payment of the mortgage debt, the commission due it as interest for the unexpired portion of the term is destroyed. The fact may be conceded. The rights of the loan company, however, must be governed by the terms of the contract to the same extent as the rights of the insurance company. When the loan company agreed to have its commission payable as a part of the interest, it knew that the obligation of the borrower to pay interest was contingent upon his using the principal, and that when the principal was paid back, either voluntarily or involuntarily, the obligation to pay interest ceased. The arrangement contemplated that the borrower was to have an option of paying his loan more rapidly that the amortization payments required, and that in such event, the loan company's total commission payments would be reduced. The loan company knew also that the extension agreement gave to the insurance company the right to declare the entire indebtedness due in the event of default in making the payments; and that if such option were exercised and the indebtedness paid through a sale of the security, the obligation of the borrower to pay interest would cease. The hazard of having the commission installments cut off necessarily inhered in the agreement to have them made a part of the interest on the mortgage debt, especially, under a contract which gave both to the borrower and the lender an option under certain circumstances to have the loan paid before the time fixed in the contract.

From an examination of the entire record, we are convinced that the decree of the trial court in this case is correct, and it is, accordingly, affirmed.—Affirmed.

The CHIEF JUSTICE and all associate Justices concur, except RICHARDS, J., who took no part.